# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re                                                      Case No. 16-10462-WRS
                                                           Chapter 13
JOE L. HOOKS
SAVANNAH D. HOOKS,

      Debtors

## MEMORANDUM DECISION

This Chapter 13 case is before the Court on the Application for Administrative Expenses filed by Debtors' counsel Samantha Valenzuela. (Doc. 36). The Court heard the motion on April 5, 2017, and requested a brief, which Valenzuela subsequently filed. (Doc. 44). For the reasons set forth below, the Application is DENIED.

## I. FACTS

The Debtors Joe L. Hooks and his wife Savannah D. Hooks filed a joint petition in bankruptcy pursuant to Chapter 13 in this Court on March 9, 2016. (Doc. 1). Joe Hooks is disabled and receives $996 per month in social security disability payments. Savannah Hooks is a cashier at McDonalds who reports gross income of $1,148 per month. (Doc. 1, Sch. I). The Debtors filed a Chapter 13 Plan calling for bi-weekly payments of $261 for 58 months. (Doc. 18).

The Debtors' Plan proposed that they keep two vehicles: (1) a 2004 Mercury Grand Marquis, which they valued at $3,700, against which they owed $7,642; and (2) a 2010 Toyota Camry, which they valued at $9,225, against which they owed $15,729. The Debtors' Plan

proposed specified monthly payments of $200 for the Mercury and $297 for the Toyota, a total of $497 per month in car payments alone.

The Plan provided for a $3,000 attorney fee to be paid to Valenzuela but no dividend to unsecured creditors. This Court allows a "no look" fee of $3,000 for Chapter 13 debtors whose income is below the national median.[1] That is, the Court does not require Debtors' counsel to file a formal fee application. Rather, an attorney fee in the amount of $3,000 is allowed presuming that cases are sufficiently fungible so as to not require individual fee applications.

On Schedules I and J, the Debtors reported total monthly income of $2,306 and expenses (excluding car payments) of $2,148, leaving net income of $158 per month. How the Debtors would make bi-monthly payments of $261, with net income of only $158 is a mystery that was never solved.[2] The Debtors' Chapter 13 Plan was confirmed without objection on July 14, 2016. (Doc. 26). On February 10, 2017, the Chapter 13 Trustee moved to dismiss this case for the Debtors' default in making plan payments. (Doc. 34). No response was filed and the Court granted the motion on March 7, 2017. (Doc. 35).

---

[1] *See* this Court's Administrative Order dated June 14, 2013, effective in cases filed on or after January 1, 2014.

[2] Why the Court would confirm a Plan which, on its face, was not feasible is a reasonable question. In the past, the Court would question counsel only to be assured that either more money would be available in the future, or that expenses would be reduced, or some combination of the two. After long and hard experience, the undersigned concluded that it was easier to simply confirm the plan and the proof would be in payments made or lack thereof. The initial gatekeeper to the process is the Debtors' lawyer, who does not get paid her fee if the Debtors do not make their payments. One good reason to deny applications from Debtors' lawyers such as the instant application is that to do otherwise would encourage cases such as this, which was never feasible from the start.

Valenzuela has been paid $2,006.28 of the $3,000.00 to be paid under contract. The Chapter 13 Trustee held $94.39 at the filing of the application, which Valenzuela wants paid to her. (Doc. 36). Valenzuela states that she filed papers with the Court and attended a meeting of creditors and a confirmation hearing—which are things expected of any lawyer who represents a debtor in bankruptcy court. Of interest here, Valenzuela has a provision in her contract which provides that upon dismissal, any funds held by the Trustee and paid over to the Debtors will be paid to Valenzuela. (Doc. 44, Ex. C). Yet, Valenzuela is requesting that the Court order the Trustee to pay funds on hand over to her.

## II. LAW

### A. Jurisdiction

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding. 28 U.S.C. § 157(b)(2)(B). This is a final order.

### B. Disposition of Funds Held by Trustee Upon Dismissal

The role of a Chapter 13 trustee is fundamental to carrying out a successful Chapter 13 case. The Chapter 13 trustees' basic role is to review the plan, advise the court with regard to the plan, and serve as the agent disbursing funds in accordance with the confirmed plan. 11 U.S.C. §§ 707(1), 521(4), 1306(b); *In re Bowker*, 245 B.R. 192, 195 (Bankr. D. N.J. 2000). However, a trustee's duties vary depending on the procedural posture of a case. The question before the Court is whether undistributed funds held by the Chapter 13 Trustee at dismissal of a confirmed

3

case shall be returned to the debtor or whether the Trustee may disburse the funds to an attorney as an allowed administrative expense relating to unpaid attorney's fees associated with the case.

Due to a gap in the Bankruptcy Code, courts are split on the proper disbursement of funds held by a Chapter 13 trustee when a case is dismissed after confirmation. A minority of courts hold that a trustee is required to distribute funds in accordance with the plan. While a majority of courts hold that a trustee must return the funds to the debtor upon dismissal of a confirmed Chapter 13 case.

In 2014, this Court handed down a decision concluding that funds held by the Chapter 13 Trustee, at the time a confirmed Chapter 13 case is dismissed, are to be paid to the debtor, "unless the Court, for cause, orders otherwise." *In re Murphy*, No. 09-81861, 2014 WL 2600168, *2 (Bankr. M.D. Ala. Feb. 11, 2014).[3] This Court's decision in *Murphy* is based upon 11 U.S.C. § 349(b), which states that "unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title–(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title."

In *Murphy*, this Court cited with approval a decision handed down in the Middle District of Tennessee, which resolved the apparent conflict between 11 U.S.C. §§ 1326(a)(2) and (c)—calling for payments to be made pursuant to the Plan—and § 349(b)—calling for funds on hand to be returned to the Debtor—by concluding that § 349(b) applies in the case of dismissal of

---

[3] The decision in *Murphy* is signed by both the undersigned and Judge Dwight Williams, which is the only time in memory that both judges of this Court have jointly signed a decision. This was done due to the importance of the issue and the fact that there was no circuit level authority on this question.

a confirmed case. *In re Hamilton*, 493 B.R. 31 (Bankr. M.D. Tenn. 2013); *see also In re Williams*, 526 B.R. 695 (N.D. Ill. 2014); *In re Beaird*, No. 16-21725, 2017 WL 4046376 (Bankr. D. Kan. Sept. 11, 2107) (concluding that § 349(b) controls the disposition of funds but finding cause for distribution of some funds to debtor's counsel); *In re Carr*, No. 13-23818, 2017 WL 3025843 (Bankr. E.D. Wis. July 17, 2017); *In re Bateson*, 551 B.R. 807 (Bankr. E.D. Mich. 2016); *In re Russell*, 538 B.R. 536 (Bankr. S.D. Ill. 2015); *In re Weatherspoon*, No. 11046755, 2014 WL 61405 (Bankr. W.D. Wash. Jan. 3, 2014).

The application of § 349(b)(3) to post-petition wages in Chapter 13 cases is admittedly awkward as the "revesting" language suggests it only applies to property in existence when the petition is filed. Despite this language, a majority of courts considering the issue hold that post-petition wages held by the trustee vest in the debtor upon the dismissal of a confirmed case, pursuant to § 349(b)(3). E.g., *Nash*, 765 F.2d 1410, 1414 (9th Cir. 1985); *In re Dubose*, 555 B.R. 41, 46( Bankr. M.D. Ala. 2016); *In re Edwards*, 538 B.R. 536, 541 (Bankr. S.D. Ill. 2015); *In re Hamilton*, 493 B.R. at 37–46; *Williams v. Marshall*, 488 B.R. 380, 386–87 (N.D. Ill. 2013); *In re Parker*, 400 B.R. 55, 62 (Bankr. E.D. Penn. 2009); *In re Slaughter*, 141 B.R. 661, 663 (N.D. Ill. 1992). The purpose of § 349 is to undo the bankruptcy case and restore all parties to the positions they were found before the case. S.Rep. No. 95-989, 49, reprinted in 1978 U.S.C.C.A.N. 5787, 5835; *In re Sanitate*, 415 B.R. 98, 104 (Bankr. E.D. Pa. 2009); *see In re Crump*, 467 B.R. 532, 535 (Bankr. M.D. Ga. 2010). This section effectively undoes the bankruptcy case, as far as practicable, and restores all property to its prepetition state. *Hamilton*, 493 B.R. at 38. Moreover, upon dismissal, the Court's acceptance of the Chapter 13 plan is negated and the parties are no longer bound by its terms. *Oparaji*, 698 F.3d 231, 238 (5th Cir.

5

2012). If the Debtors never filed a Chapter 13 case, they would be entitled to their wages, subject to a creditor reaching those wages pursuant to applicable nonbankruptcy law. *In re Slaughter*, 141 B.R. at 663-64. The application of § 1306(a)(2) in Chapter 13 cases results in post-petition wages becoming property of the estate and the primary means of funding the plan. Upon dismissal of the case, there is no plan to fund. Therefore, requiring the Trustee to disburse the funds, which were withheld from the Debtors' wages pursuant to an Income Withholding Order, to the Debtors more nearly achieves the intended purpose of § 349 to undo the bankruptcy case and return the parties to their original position.

Starting with the rule that funds on hand upon dismissal of a confirmed Chapter 13 case shall be paid to the debtor unless the Court, upon a showing of cause, orders otherwise, we next consider whether there is cause to do so in this case. In support of her application, Valenzuela cites her contract with the Debtors and also argues she did those things that a lawyer does for her client. If the Court accepted Valenzuela's argument here, it would be bound to pay over funds to any debtors' counsel who arguably did her job. That, in itself, could never be the case or a showing of cause would be nearly meaningless.

Valenzuela cites § 1326(a)(2) in her brief, which provides that:

> A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as it practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).

This Court rejected the argument that § 1326(a)(2) controls the disposition of funds on hand upon dismissal of a confirmed Chapter 13 case when it decided *Murphy, supra*. In effect, Valenzuela is asking this Court to reconsider its decision in *Murphy*. There is nothing wrong with asking a court to reconsider a prior ruling. However, the Court here faults Valenzuela for not citing *Murphy* in her brief and explaining why she thinks it was wrongly decided. Instead, she argues as if this is a case of first impression[4]. Section 1326(a)(2)'s language referencing "allowed administrative expenses" is inapplicable to confirmed cases, such as this one. Only if the case is not confirmed is the Trustee required to pay allowed administrative expenses before returning undistributed funds to the debtor. This provision does not entitle Valenzuela to payment of attorney's fees as an allowed administrative expense because the case was dismissed after confirmation.

Valenzuela cites *Harris v. Viegelahn*, 135 S.Ct. 1829 (2015), in support of her application. This issue in *Harris* is what to do with funds on hand when a case is converted from Chapter 13 to 7. The Supreme Court in *Harris* looked to 11 U.S.C. § 348(f)(1)(A) and concluded that the funds should be paid over to the debtor. As § 348 deals exclusively with converted cases, and as the case at bar was dismissed and not converted, neither *Harris* nor § 348 governs. Valenzuela's argument to the contrary is without merit.

This Court finds instructive a decision recently handed down by the bankruptcy court in the Western District of Louisiana. *In re Demery*, 570 B.R. 220 (Bankr. W.D. La. 2017). In *Demery*, a Chapter 13 bankruptcy case was dismissed after confirmation. Debtor's counsel in

---

[4] In a more recent case, *In re Dubose*, 555 B.R. 41 (Bankr. M.D. Ala. 2016), this Court once again considered the disposition of funds when a confirmed case is later dismissed.

*Demery*, like Valenzuela, wanted the funds on hand paid over to him. The Court in *Demery* concluded that § 349 required that funds on hand be paid to the debtor unless "cause" to do otherwise was shown. It stated that "the cases this Court has found dealing with the 'for cause' exception generally involve some kind of inequity or bad faith." *Id*, at 224. The Court in *Demery* did not find any inequity or bad faith and declined debtor's counsel's application for the fees. This Court finds the ruling in *Demery* to be sensible and will insist that debtors' counsel do something more than ask to be paid to make a showing of cause. To be sure, making an argument that her client was acting in bad faith or inequitably puts debtor's counsel in a bind. However, any lawyer who charges her client a fee has an inherent conflict of interest. This is no different.

Valenzuela has ignored this Court's ruling in *Murphy* and makes no effort to make a showing of cause. While this Court did not question Valenzuela as to the Debtors' intentions with regards to their Chapter 13 Plan, nothing has come to light. That is, the Plan was unworkable on paper as their income was insufficient to pay their living expenses and fund their Plan. Maybe Valenzuela and the Debtors had something in mind, which did not pan out, or maybe the case was simply unrealistic from the start, with no hope of success. If a debtors' counsel such as Valenzuela decides to "bet the come" hoping that the Debtors can alter their circumstances and fund the plan, it is unreasonable for her to claim that this is somehow "cause" within the meaning of § 349(b).

Case 16-10462    Doc 45    Filed 10/31/17    Entered 10/31/17 12:27:33    Desc Main
Document      Page 8 of 9

### III. CONCLUSION

This Court reaffirms that its rule for the disposition of funds upon the dismissal of a confirmed Chapter 13 case is as set forth in *Murphy*. That is, the money held by the Chapter 13 Trustee is to be returned to the Debtors upon the dismissal of a confirmed Chapter 13 case. Debtors' counsel may attempt to make a showing of cause to do otherwise; however, Debtors' counsel in this case failed to do so. The Court will enter an order by way of a separate document calling for the Chapter 13 Trustee to pay over the funds on hand in this case to the Debtors.

Done this 30th day of October, 2017.

United States Bankruptcy Judge

c: Samantha Valenzuela, Attorney for Debtors
   Sabrina L. McKinney, Trustee
   Teresa R. Jacobs, Bankruptcy Administrator